Filed 9/26/14  P. v. Clark CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C073263 |
| Plaintiff and Respondent, | (Super. Ct. No. SF115048A) |
| v. | |
| CHARLOTTE CLARK, | |
| Defendant and Appellant. | |

A jury convicted defendant Charlotte Clark of two counts of lewd conduct upon a child under the age of 14 years (Pen. Code, § 288, subd. (a);[1] counts one and two) and one count of contacting a minor with the intent to commit an enumerated sex crime

---

[1] Undesignated statutory references are to the Penal Code.

1

(§ 288.3, subd. (a); count three). The court sentenced defendant to state prison for the midterm of six years on count one; a consecutive one-third the midterm, or two years, on count two; and a concurrent term of three years for count three.

Defendant appeals. She contends, and the People concede, that her conviction for violating section 288.3 must be reversed on ex post facto grounds. Since the evidence does not show beyond a reasonable doubt that the conduct occurred after the effective date of section 288.3 (November 8, 2006), we agree and will reverse defendant's conviction on count three.

Adopted by the voters (*People v. Keister* (2011) 198 Cal.App.4th 442, 451) and effective November 8, 2006, section 288.3 provides, in relevant part, as follows:

"(a) Every person who contacts or communicates with a minor, or attempts to contact or communicate with a minor, who knows or reasonably should know that the person is a minor, with intent to commit an offense specified in Section 207, 209, 261, 264.1, 273a, 286, 288, 288a, 288.2, 289, 311.1, 311.2, 311.4 or 311.11 involving the minor shall be punished by imprisonment in the state prison for the term prescribed for an attempt to commit the intended offense.

"(b) As used in this section, 'contacts or communicates with' shall include direct and indirect contact or communication that may be achieved personally or by use of an agent or agency, any print medium, any postal service, a common carrier or communication common carrier, any electronic communications system, or any telecommunications, wire, computer, or radio communications device or system."

Defendant was charged in the language of section 288.3, subdivision (a) with acts that occurred "on and between June 1, 2006, and September 1, 2008."

At trial, the victim testified that she lived in California until 2005 and then moved with her mother to Oregon. In the summer of 2006, after the victim finished second grade and when she turned eight years of age (her birthday is in July), the victim visited defendant (the victim's grandmother) in Stockton. While there that summer, the victim

2

and defendant went to the house of defendant's boyfriend, DW. The victim remained in the living room while defendant and DW went into his bedroom. Defendant and DW returned to the living room naked. After sitting on the couch for a short time, they returned to his bedroom. DW went back into the living room and took the victim into his bedroom, where defendant was lying on her stomach with her hands and feet tied with rope. After defendant told DW to " 'go ahead,' " DW used an electric racket and a frozen paddle to hit defendant, who was crying and "giggling." The victim smelled burnt flesh and saw burn marks on defendant's butt. At some point, defendant had a ball gag in her mouth. The victim said she did not feel well and wanted to leave. Defendant wanted to spend the night. The victim went outside and sat in the car, waiting for defendant. When defendant came out and got into the car, defendant was crying and said that she wanted to stay. Defendant threatened the victim that if she told anyone what had happened, the victim would not be able to visit the family. The victim claimed that when she returned to Oregon, she told her mother about what had happened at DW's house.

When interviewed at a children's center in 2010, the victim claimed that defendant and DW wanted the victim to get naked too but she refused. The victim did not recall whether defendant's conduct at DW's house occurred in the summer of 2006 when the victim turned eight years of age or the summer of 2007 when the victim turned nine years of age. She also thought that the offense occurred after her brother graduated from high school.

The victim's mother testified that the victim told her about the incident at DW's house shortly before the victim's brother graduated from high school in 2009, but that the victim had claimed the offenses occurred when she was in the second grade.

In a pretext call in 2010, the victim referred to the time during which the offenses occurred as when she was "only like in second or third grade."

During an interview in 2010 after her arrest, defendant claimed she took the victim to DW's house in the summer of 2005. At trial, defendant testified she took the victim to DW's house in the summer of 2006.

The court instructed the jury that defendant was charged "with contacting a minor with the intent to commit a lewd or lascivious act on a child under the age of 14 years in Count 3 sometime during the period of June 1st, 2006 to September 1st, 2008."

As defendant contends and the People concede, defendant's conviction on count three violates the constitutional prohibition against ex post facto laws. "The United States Constitution and the California Constitution proscribe ex post facto laws. [Citations.] Both Constitutions protect against the later adoption of a statute that inflicts greater punishment than the law in effect at the time of the commission of the crime. [Citations.]" (*People v. Riskin* (2006) 143 Cal.App.4th 234, 244.)

Although defendant was charged with violating section 288.3 "on and between June 1, 2006, and September 1, 2008," the evidence was inconsistent when the violation occurred. Although the victim stated during an interview and in a pretext call that the offense occurred in the summer of 2006 (after she finished second grade) or the summer of 2007 (after she finished third grade), the victim testified at trial that the offense occurred in the summer of 2006. The victim's mother testified that when the victim disclosed the offense in 2009, the victim claimed that the offense occurred after she finished the second grade (summer of 2006). The evidence does not establish beyond a reasonable doubt that defendant violated section 288.3 (count three) after its effective date (November 8, 2006). Imposition of a concurrent term of three years for count three violated the ex post facto clauses of the federal and state Constitutions. Thus, we will reverse defendant's conviction/sentence on count three.

## DISPOSITION

The judgment is modified, vacating the concurrent term on count three and reversing defendant's conviction for violating section 288.3. The trial court is directed to

4

prepare an amended abstract of judgment, deleting defendant's conviction/sentence on count three, and to forward a certified copy thereof to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.


                                                  RAYE            , P. J.


We concur:


      NICHOLSON      , J.


      ROBIE           , J.